CHARLES C. OLIPHANT and WILLIAM FRANKLIN OLIPHANT, trading as C. C. OLIPHANT & SON, *vs.* THE STATE BOARD OF EDUCATION OF THE STATE OF DELAWARE.

MECHANICS' LIENS—RIGHT TO FILE LIEN VESTED WHEN WORK BEGAN AND NOT AFFECTED BY CHANGE OF OWNERSHIP THEREAFTER.

The right to file a mechanic's lien was fixed as of the date on which work was commenced though date of filing was postponed by statute, and such right was not affected by subsequent acquisition of ownership by the state; purchaser taking the property *cum onere.*

(*April* 29, 1924.)

RICE and RODNEY, J. J., sitting.

*James M. Tunnell* for plaintiff.
*Clarence A. Southerland,* Deputy Attorney-General, for defendant.

Superior Court for Sussex County, April Term, 1924.

MECHANIC'S LIEN, No. 24, April term, 1924.

This was a mechanic's lien filed against a public school building in Sussex County. Exceptions to the statement of claim and an affidavit of defense were filed. The defense raised was that the State Board of Education was not a corporation but an instrumentality of the State; that a suit against a State Board is a suit against a State, which can be maintained only when specifically authorized. It was also contended that a mechanic's lien cannot be enforced against public property, acquired and used by and for the benefit of the public.

It appeared, however, that the work commenced November 1, 1923, and was completed December 15, 1923. That during this

32 Del.]   Oliphant et al. vs. Board of Education   487

Opinion.

time the title to the property was in the name of an individual and title was taken to the State on January 15, 1924. The lien was filed March 14, 1924, and judgment was sought notwithstanding the affidavit of defense.

Rodney, J., delivering the opinion of the Court:

The work on the building in question having been commenced on November 1, 1923, the right to file a lien was fixed as of that date. While the actual date of the filing of the lien was postponed by the terms of the statute, yet the right to file the lien became vested when the work began. In 2 *Jones on Liens*, § 1558, it is said:

"The right to the lien before the filing of the notice or claim of lien, even from the time the material is furnished or the labor performed, is a part of the obligation of the contract and is a right which the law and constitution protect in the same way that they protect the title to corporeal property."

See, also, *Rockel on Mechanics' Liens*, § 6; *Goodbub v. Hornung*, 127 *Ind.* 181, 26 *N. E.* 770.

Some cases have held the right to file a lien was not a vested right where the statute has been amended or repealed, but that the lien was simply remedial, but with these cases we are not concerned. Here the statute has remained the same and only the ownership of the property has changed since the commencement of the work. In *France v. Woolston*, 4 *Houst.* 564, the Court speaks of the day when the work was first done or the materials furnished as the day "when the specific and retrospective lien" attached to the premises and that case held that it was the direct intent and object of the statute that the claimant should have priority from the day the work upon the premises or the furnishing materials was commenced over all liens and incumbrances subsequently obtained against the owner or against the property whether general or special in their character.

The right to the lien being fixed or vested, it is fundamentally the law of mechanics' liens in those jurisdictions recognizing the existence of the lien from the beginning of the work or furnishing material that the lien thus attached is not affected by a change of

ownership during the progress of the work. The purchaser takes the property "cum onere."

This brings us to the application of these principles to the fact that the title was acquired after the completion of the work by an instrumentality of the State for public purposes, namely, a public school. With very marked unanimity the decisions of the country hold that there can be no lien for labor or materials fastened upon a property belonging to the public and used for public purposes. Among these may be included *Emory v. Com. of Laurel*, (*3 Penn.*) 67, 55 *Atl.* 1118. There the Court refused to allow the lien on the engine house of the municipal waterworks. Most of the authorities and the varying lines of reasoning on which they are based are collected in a note in 26 *A. L. R.* 326.

So far as we have discovered, however, in none of these cases did it appear that the right to the lien became fixed before the property became public property or that all the materials were furnished and all the labor performed before the acquisition of the title by the State.

In *City of Salem v. Lane & Bodley Co.*, 90 *Ill. App.* 560, the Court succinctly held that the ownership of the land was the issue upon which the case turned. If the city owned the land when the claimant contracted to supply an engine to the main contractor for a waterworks system the mechanic's lien would not lie, but if the contractor owned the land at the time the engine was contracted for and furnished the mechanic's lien did attach and the subsequent acquisition of the plant by the city from the contractor was made subject to the lien. On appeal the Court in 189 *Ill.* 593, 60 *N. E.* 37, 82 *Am. St. Rep.* 481, affirmed the judgment saying:

"Such a lien would not be displaced by the conveyance to the City, but the lien remained as fully effective against the property after the conveyance to the City as before."

In *McNeal Pipe & Foundry Co. v. Howland*, 111 *N. C.* 615, 16 *S. E.* 857, 20 *L. R. A.* 743, the following facts appeared: Howland contracted to build a system of waterworks for the town of

Durham.   He obtained his pipes from the plaintiff.   After the commencement of the work a public service corporation was formed to furnish the town with water, with power of eminent domain, and the contract taken over from the city by this corporation and the work completed for it.   After the pipes were furnished and before the lien was filed the work was completed and turned over to the corporation which paid Howland in full.

The Court said:

"If it be granted that the defendant company was, in a sense, a public corporation, and its property was devoted to a proper public purpose, it did not and could not buy the property it did buy from its codefendant discharged of the plaintiff's lien without its assent.   It did not assent, and hence the company took the property charged with and subject to the lien.   No public corporation—not the state itself—could purchase property for public purposes charged with a lien in favor of the plaintiff, and thereby discharge such lien, unless with the plaintiff's assent, or by proper condemnation of the property, and compensation to him to the extent of his interest.   The lien was a lawful and valuable incident to and security for the plaintiff's debt, and it could no more be deprived of it, as contended, than it could be of the debt itself.   It was the misfortune or folly of the company that it purchased property for public purposes subject to a lien.   It ought to have been more cautious and better advised."

In *Crane Creek Irr. Dist. v. Portland Wood Pipe Co.*, 231 *Fed.* 113, 145 *C. C. A.* 301, it is said:

"While on grounds of public policy the property of municipal corporations held for public purposes may be exempt from the operation of the general lien laws of the State, yet such municipalities may not enter into contracts with third persons for the construction of plants or other improvements on the property of such third persons to be thereafter conveyed to the municipality, and then claim the statutory exemption from liens for labor performed upon or materials used in the construction of the contemplated improvements."

We, therefore, hold that when the state Board of Education acquired the title to the property on January 15, 1924, it took the property as it then was, burdened with any lien then existing and that its acquisition for public purposes did not destroy any pre-existing lien.

The motion for judgment notwithstanding the affidavit of defense is granted and the exceptions to the statement of claim are overruled.